[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12837
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cr-14078-KMM-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALPHONSE PIERRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 7, 2012)

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Alphonse Pierre appeals his convictions for conspiring to and attempting to import five kilograms or more of cocaine, 21 U.S.C. § 963, and conspiring to possess and possessing with intent to distribute five kilograms or more of cocaine, id. §§ 846, 841(a)(1). Pierre challenges the denial of his motion for a judgment of acquittal, the admission of testimony and other evidence, and evidentiary rulings. We affirm.

Three standards of review govern this appeal. We review de novo the denial of a judgment of acquittal, and we construe the evidence in the light most favorable to the government. United States v. Pena, 684 F.3d 1137, 1152 (11th Cir. 2012). We review the admission of testimony and other evidentiary rulings for an abuse of discretion. United States v. Woods, 684 F.3d 1045, 1062 & n.17 (11th Cir. 2012); United States v. Kennard, 472 F.3d 851, 854 (11th Cir. 2006). Objections or arguments that are not raised in the district court are reviewed for plain error. United States v. Hoffman-Vaile, 568 F.3d 1335, 1340 (11th Cir. 2009).

The district court did not err by denying Pierre's motion for a judgment of acquittal. Sufficient evidence established that Pierre, a native and citizen of Haiti, was involved in a conspiracy to import and distribute cocaine. Pierre and his girlfriend were discovered in the master stateroom of a boat used to smuggle them

and three other aliens from the Bahamas into the United States.  Inside the master stateroom, agents discovered four weighty pieces of luggage containing 78 kilograms of cocaine, which testing later revealed was 74 percent pure cocaine and could be diluted to increase the quantity to distribute.  Agents seized from Pierre a set of keys that opened locks on the luggage, $2,600 in US currency, and a Blackberry cellular telephone.  Pierre's telephone contained text messages that Pierre had sent to his wife and a contact list programmed with speed dial numbers for four coconspirators: Widline Vaughn; a person identified as Manno; Guy Derilus; and Pierre's cousin, Luckson Morin, who was a taxicab operator living in Florida.  Agents arrested Derilus and Morin after they met the boat at a dock on the St. Lucie River in Stuart, Florida.  Agents also arrested Pierre and recorded a telephone call that he made from jail instructing his wife to contact Vaughn using the telephone number programmed into Pierre's cellular telephone.  During trial, Morin testified that Pierre had agreed to pay the cost of leasing Morin's taxi for one week in exchange for transportation from the dock; Pierre had arranged a meeting at a McDonald's restaurant between Morin and the captain of the boat, William Roberts, to select a site to dock the boat; Pierre had given Vaughn's telephone number to Morin; and Vaughn had introduced Morin to Derilus, who intended to collect the cocaine from the boat.  Captain Roberts testified about

3

meeting Morin at McDonald's; sailing with the aliens from the Bahamas; and cooperating with agents to make a controlled delivery of the cocaine. Morin and Agents Jeffery Deslauriers and John Rees corroborated Roberts's story about the controlled delivery. And Daniel Malone, a forensic examiner for the Department of Homeland Security, testified about toll records of telephone calls preceding the arrival of the boat between Morin and Roberts, Morin and Derilus, Derilus and Vaughn, Vaughn and Roberts, Vaughn and Manno, Vaughn and Pierre's wife, Vaughn and Pierre, and Manno and Pierre. A jury reasonably could find that Pierre conspired to import cocaine into the United States for distribution. See United States v. Quilca-Carpio, 118 F.3d 719, 721–22 (11th Cir. 1997).

The district court did not abuse its discretion when it admitted testimony from Agent Deslauriers about Pierre's girlfriend or when it permitted the prosecutor to use leading questions. Deslauriers testified about Pierre's girlfriend to establish the identity of the aliens on board the boat and to establish that Pierre also had a wife, which was relevant to a recorded telephone call to her in which Pierre instructed her to contact Vaughn for assistance in hiring an attorney. See Fed. R. Evid. 401. Pierre argues that "Morin's testimony was totally lead [sic] by the prosecutor," but the district court sustained Pierre's objections to the prosecutor's leading questions. See United States v. Ramirez, 426 F.3d 1344,

4

1353 (11th Cir. 2005). Pierre also argues that Agent Eddie Melton "played off of leading questions," but Melton was a defense witness who could be asked leading questions during cross-examination. See Fed. R. Evid. 611(c)(1).

The district court did not plainly err by admitting other testimony from Agent Deslauriers, Agent Melton, or Roberts or by permitting the prosecutor to comment on Morin's testimony. Pierre argues that the testimony and comments "[b]olstered and [v]ouch[ed] for the [c]redibility of [w]itnesses," but no reversible error occurred. To constitute plain error, the admission of the statements must have affected Pierre's substantial rights and "'seriously affect[ed] the fairness, integrity or public reputation'" of his trial. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). Deslauriers's brief statement that he perceived Roberts as being truthful when he admitted smuggling aliens into the United States and denied any knowledge about the cocaine concealed in the luggage did not affect Pierre's substantial rights. And Roberts was entitled to testify that he had been a "fair guy, straight shooter" with persons in the "Haitian community" to explain why he had been "dumbfounded," "angry," and believed he had been "set up" and "betrayed" when he learned about the cocaine. Fed. R. Evid. 701. After Pierre called Melton as a witness and questioned him about his credentials, the prosecutor was entitled to ask Melton about his experience, see Fed. R. Evid.

5

611(b), which was relevant to his credibility, see Fed. R. Evid. 402. And the prosecutor was entitled in summation "to point[] out features of [Morin's] testimony that supported [his] credibility," United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984), which included Morin's unease in having to confess his crimes in the presence of his family and to testify against Pierre.

The district court also did not plainly err when it admitted eight statements made by Agent Deslauriers, Agent Rees, Agent Malone, and Roberts that Pierre now contends was inadmissible hearsay. Pierre's substantial rights were not affected by the admission of three hearsay statements by Deslauriers that Rees had said that he found contraband in the luggage; Officer Benjamin Caudill had said that he found the keys to access the luggage in Pierre's pocket; or Roberts had said that each alien had boarded carrying a piece of luggage. See Turner, 474 F.3d at 1276. These statements were cumulative in the light of Deslauriers's testimony that he had tested the white powder to verify the presence of cocaine and that Pierre had admitted possessing the keys; Caudill's testimony that he had found the keys in Pierre's pocket; and Roberts's testimony that the aliens had brought luggage on board the boat. Deslauriers's fourth statement that Rees had told him that Morin had arrived at the dock was admissible under the exception to the hearsay rule for present sense impressions. Fed. R. Evid. 803(1). And Pierre fails

6

to identify any hearsay in Deslauriers's fifth statement about signing evidence forms; Rees's statement that he did not know the "acquiring agent" who had labeled the cocaine; Agent Malone's testimony; or Roberts's "wandering narrative of his contacts and conversations with" another smuggler.

The district court did not abuse its discretion by overruling Pierre's hearsay objections to questions posed to Roberts and Agent Rees. Roberts's testimony about why the owner of the boat insisted on giving Roberts a bill of sale was not hearsay. See Fed. R. Evid. 801(c)(1). No error occurred during Rees's testimony because Pierre objected before Rees could repeat a statement by the boarding crew that they had found keys to the luggage in Pierre's pocket.

The district court did not plainly err when it admitted testimony from Agent Deslauriers that Pierre "wasn't cooperating," "he wasn't going to be truthful," and it was "pointless to continue questioning him." There is no merit to Pierre's conclusory argument that Deslauriers's statements violated the due process and self-incrimination clauses of the Fifth Amendment under United States v. Miller, 255 F.3d 1282 (11th Cir. 2001), and Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240 (1976), which prohibit the government from eliciting testimony that a defendant invoked his right to remain silent after being advised of his right to counsel. Deslauriers testified that Pierre waived his right to counsel and then told agents

7

that he did not see anyone bring luggage aboard the boat and had no idea how the keys got in his pocket.  Deslauriers was entitled to testify that he perceived Pierre as being uncooperative.

The district court also did not plainly err when it allowed Agent Randy Matschner to testify as an expert witness or when it asked Matschner to "explain to the jury what the percentage of [quality] is of street level [cocaine] or use quantity typically."  When the prosecutor offered Matschner as an expert witness, Pierre stated that he "did not have any objections," and waived his challenge to Matschner's qualifications.  See Lindsey v. Navistar Int'l Transp. Corp., 150 F.3d 1307, 1315 n.2 (11th Cir. 1998).  The district court acted within its "wide discretion in managing the proceedings," United States v. Day, 405 F.3d 1293, 1297 (11th Cir. 2005), when it asked Matschner to explain the value of the cocaine.

The district court did not plainly err when it admitted into evidence the cocaine, keys, luggage, and Deslauriers's "paperwork."  Pierre argues that an insufficient chain of custody existed to support admission of these items, but his "[c]hallenge to the chain of custody goes to the weight rather than the admissibility of the evidence."  United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985).  Deslauriers's paperwork was offered into evidence by Pierre, and

8

"'where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error.'" United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003) (quoting United States v. Martinez, 604 F.2d 361, 366 (5th Cir. 1979)).

Pierre argues about cumulative error based on the admission of testimony and evidence, but his argument fails. Because Pierre fails to identify any reversible error, there can be no cumulative error. United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004).

Pierre also argues, for the first time, about the admission of testimony that connected him to smuggling aliens into the United States and an alleged constitutional violation, but these arguments fail too. Evidence about the conspiracy to smuggle aliens was inextricably intertwined with the conspiracy to import and distribute cocaine. Testimony about the aliens was integral to establish how Pierre concealed and transported the cocaine to the United States. See United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). Pierre argues that the "[s]eizure, [b]oarding, and [s]earch of the boat . . .and the [s]earch of [his] person[]" violated the Fourth Amendment to the U.S. Constitution, but Pierre waived any alleged constitutional violation by failing timely to move to suppress the evidence before trial or to request a waiver from the timeliness requirement.

9

Fed. R. Crim. P. 12(e); <u>see</u> <u>United States v. Slocum</u>, 708 F.2d 587, 600–01 (11th Cir. 1983).  And Pierre provides no good cause to excuse his failure to comply with Rule 12(b)(3)(C).  <u>See</u> <u>United States v. Barrington</u>, 648 F.3d 1178, 1190 (11th Cir. 2011).  The district court did not plainly err by admitting the evidence.

## IV. CONCLUSION

We **AFFIRM** Pierre's convictions.